**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| v. | ) | **Criminal No.  19-135** |
| | ) | |
| **QUANTEL SEARCY** | ) | |

<u>**Opinion and Order on Motion to Suppress**</u>
<u>**Evidence Obtained from Mobile Tracking Device**</u>

Presently before the Court is Defendant Quantel Searcy's Motion to Suppress Evidence

Obtained from Mobile Tracking Device.  ECF No. 581.  The government filed a Response to the

Motion, to which Mr. Searcy filed a reply.  ECF Nos. 609 & 613.  Oral argument on the motion

was held on May 11, 2021, and the Motion is now ripe for resolution.[1]

### I.    Motion to Suppress Evidence Obtained from Mobile Tracking Device

On May 16, 2017, New Castle City Police placed a mobile tracking device on a vehicle

alleged to be associated with Mr. Searcy.  Authority to use the tracking device was obtained

pursuant to a Lawrence County Court of Common Pleas Order.  Said Order was issued based on

a May 9, 2017 Affidavit of Probable Cause in Support of the Application for authority to install

and use the tracking device.  ECF No. 581-1.  Mr. Searcy argues that law enforcement lacked

probable cause to install and use the tracking device on the target vehicle.  First, he argues that

the Affidavit was based on a demonstrably inaccurate statement.  Next, he argues that the

Affidavit of Probable Cause lacks a sufficient nexus between allegations of narcotics dealings

and the vehicle that was tracked.  Finally, he argues that law enforcement violated the Lawrence

---

[1]  Mr. Searcy, along with eight codefendants, is charged in a twenty-four count Indictment alleging violations of the
Controlled Substances Act.  ECF No. 3.  Mr. Searcy is charged in Count 1 with conspiracy to distribute and possess
with intent to distribute cocaine and crack cocaine, from in and around 2017 to in and around May 2019, and in
Counts 22, 23, and 24, he is charged with  three counts of distribution and possession with intent to distribute
cocaine.

County Court's Order, and Pennsylvania law, by using the mobile tracking device to conduct surveillance outside the Commonwealth, specifically, Youngstown, Ohio.

### A. Facially Inaccurate Statement

Defense counsel showed that the relevant Affidavit of Probable Cause, dated May 7, 2017, included a statement, at Paragraph 21, attributed to a Confidential Informant (CI) that could not be accurate.  Paragraph 21 of the Affidavit states:

> CI stated that he/she has purchased cocaine from Quantel four (4) or five (5) [times] over the last two (2) months with his/her most recent purchase being approximately three (3) weeks ago.  CI advised Detective COSTA that he/she purchased ½ ounces of cocaine for $700.00 in USC.

ECF No. 851-1, at ¶ 21.   The same or similar language, referring to the same CI and Quantel Searcy, was previously used in the Synopsis section of a February 9, 2017 New Castle City Police Investigation Report and in an April 7, 2017 Affidavit of Probable Cause at Paragraph 6. Def. Exs. 1 & 2.  The Government conceded at oral argument that Paragraph 21 of the May 7, 2019 Affidavit and Paragraph 6 of the April 7, 2017 Affidavit are inaccurate.

"The Fourth Amendment prohibits the intentional or reckless inclusion of a material false statement (or omission of material information) in a search-warrant affidavit."  United States v. Pavulak, 700 F.3d 651, 665 (3d Cir. 2012), citing United States v. Yusuf, 461 F.3d 374, 383–84 (3d Cir. 2006).  The inclusion of materially false statements or reckless omissions of material facts render search warrants invalid under Franks v. Delaware, 438 U.S. 154, 155-56 (1978).  A defendant may be entitled to a Franks hearing if he is able to make a "substantial preliminary showing" that the affiant knowingly or recklessly omitted facts from the affidavit (or included a false statement in the affidavit) and is able to demonstrate that the omitted facts (or false statements) are "necessary to the finding of probable cause."  Pavulak, 700 F.3d at 665, quoting Yusuf, 461 F.3d at 383–84.

2

The Third Circuit has explained that "(1) omissions are made with reckless disregard for the truth when an officer recklessly omits facts that any reasonable person would know that a judge would want to know: and (2) assertions are made with reckless disregard for the truth when an officer has obvious reasons to doubt the truth of what he or she is asserting." Wilson v. Russo, 212 F.3d 781, 783 (3d Cir. 2000). In addition to finding that the statements were false or recklessly or knowingly omitted from the affidavit, the court must also determine whether the missing statements were "material, or necessary, to the finding of probable cause." Sherwood v. Mulvihill, 113 F.3d 396, 399 (3d Cir. 1997). The materiality of omissions and false statements is determined by "excis[ing] the offending inaccuracies and insert[ing] the facts recklessly omitted, and then determine whether or not the 'corrected' warrant affidavit would establish probable cause." Wilson, 212 F.3d at 789, citing Sherwood, 113 F.3d at 399.

As noted, the Government concedes that the CI's statement in the May 7, 2017 Affidavit is inaccurate. To clarify, the CI's similar statement included in the February 7, 2017 Police Report is not being challenged as inaccurate as of February 7, 2017, but the same statement included in the May and April 2017 Affidavits is conceded to be inaccurate. At argument, the government characterized the inaccuracy as unintentional. The inaccurate statements do appear to have been innocently carried over from the February 7, 2017 Police Report to the April 7, 2017 Affidavit, and then again to the May 7, 2017 Affidavit. However, the question for the Court is whether a reasonable person (the affiant) would know, that in an affidavit seeking to obtain a tracking device for an alleged drug trafficker's vehicle, whether the most recent time the CI engaged in a drug transaction with the target was three weeks prior to May 7, 2017, or in fact, that the drug transaction actually occurred four months earlier is a fact that the judge would want to know. No testimony was presented at the hearing; and therefore, the Court lacks evidence as

3

to the affiant's explanation as to why the inaccurate statement appeared in the Affidavit.  In any

event, the Court concludes that a reasonable person would know that a judge reviewing an

affidavit in support of an application for a warrant (or in this case an Order requesting a mobile

tracking device) would want to be told accurate information as to when a CI engaged in drug

transactions with an alleged drug trafficker.  In addition, the Court finds that the affiant here

should have had obvious reasons to doubt the truth of the inaccurate statement.  Therefore, the

Court will consider whether the inclusion of the inaccurate information and the omission of the

factual information was material or necessary to the finding of probable cause.

       To determine materiality, the inaccurate facts are excised from the affidavit and the

omitted facts are inserted into the affidavit, and then the affidavit is examined to determine

whether it would establish probable cause.  <u>Wilson</u>, 212 F.3d at 789.  The excision and insertion

in this case concern the same fact.  Thus, to correct the Affidavit, the inaccurate information in

Paragraph 21 would be omitted and replaced with accurate information.  The corrected

statement, with insertions in bold, is as follows:

> CI stated that he/she has purchased cocaine from Quantel four (4) or five (5)
> [times] ~~over the last two (2) months~~ **in December 2016 and January 2017** with
> his/her most recent purchase being approximately ~~three (3) weeks ago~~ **January
> 17, 2017**.  CI advised Detective COSTA that he/she purchased ½ ounce of
> cocaine for $700.00 in USC **on January 17, 2017**.

The fact that the CI's prior drug transactions with Quantel Searcy occurred in December 2016

and January 2017, with the last transaction occurring on January 17, 2017, rather than occurring

in March and April 2017, might slightly undermine the importance of the recency of the CI's

conduct, but in light of the other averments in the affidavit, it does not eliminate probable cause.

The Court finds that a neutral detached judge reviewing the affidavit in a common sense manner

and considering all the circumstances would conclude that probable cause had been established

because in fact the affidavit accurately informs a judge that the CI had conducted an undercover drug buy with Quantel Searcy on February 9, 2017 (¶¶ 25-33) and again on May 4, 2017 (¶¶ 34-41).  Therefore, the Court finds that the inclusion of the CI's inaccurate statement and omission of an accurate statement is not material to the finding of probable cause.  Mr. Searcy's Motion is DENIED as to this argument.

### B.   Nexus between Narcotics Dealings and the Target Vehicle

Mr. Searcy argues that the Affidavit lacks sufficient information to establish a nexus between the alleged narcotics dealing and the target vehicle.  His argument is centered on the dearth of allegations with respect to the vehicle in contrast to the alleged four or five other drug transactions mentioned in the affidavit, which he alleges were not connected to the target vehicle. The Affidavit states that the CI said that Mr. Searcy "drives an 'old school Red tahoe' to facilitate the transactions of the cocaine (Detectives have observed Quantel operating)."  ECF No. 581-1, at ¶ 22.  As noted, the Affidavit also describes a May 4, 2017 controlled buy drug transaction between the same CI and Mr. Searcy that occurred in the target vehicle.  The Court finds that such statements, read in context with the entire Affidavit, establish a sufficient nexus between Quantel Searcy's alleged drug trafficking and the target vehicle.   Mr. Searcy's Motion is DENIED as to this argument.

### C.   Violation of the Lawrence County Court's Order and Pennsylvania law

On May 22, 2017, the mobile tracking device attached to Mr. Searcy's vehicle pinged to a location in Youngstown, Ohio.  The New Castle City Police and a DEA Agent responded to the location ping and physically surveilled the Youngstown, Ohio location.  Mr. Searcy argues that law enforcement's conduct violated both the Lawrence County Court's Order authorizing the use of the mobile tracking device and Pennsylvania's Wiretapping and Electronic Surveillance

Control Act, 28 Pa. Cons. Stat. § 5761.  He therefore argues for suppression of any evidence resulting from information obtained as a result of such surveillance in Ohio.

The Pennsylvania wiretap statute includes the following jurisdictional limit on the authorized use of a mobile tracking device:

> **(b) Jurisdiction**.--Orders permitted by this section may authorize the use of mobile tracking devices if the device is installed and monitored within this Commonwealth. The court issuing the order must have jurisdiction over the offense under investigation.

18 Pa. Cons. Stat. § 5761(b).  The Lawrence County Court of Common Pleas Order Authorizing the Installation and Use of a Mobile Tracking Device in this case permits law enforcement to monitor the target vehicle "so long as the vehicle is within the Commonwealth."  ECF No. 581-2, at ¶ 10.  The Order further states: "If information is obtained concerning the vehicle's movements outside the Commonwealth, this information may not be used under the authority of this order, however, the information may be used if authorized by another jurisdiction."  Id.

The government admits the conduct but argues that if such conduct is deemed a violation of the Court Order, it does not merit the extreme sanction of suppression.  Neither party submitted case law in support of their arguments, and the Court has found none directly on point. In Commonwealth v. Burgos, the Pennsylvania Superior Court reversed the trial court's grant of defendant's motion to suppress all evidence derived from the use of a mobile tracking device. Com. v. Burgos, 64 A.3d 641, 643 (Pa. Super. Ct. 2013).  Tangentially related to this case is the trial court's recitation of the fact that, through use of the mobile tracking device law enforcement was able to monitor the defendant's movement out of Pennsylvania, and through Virginia, North Carolina, South Carolina, Georgia, and then back to Pennsylvania.  The defendant's movement outside of Pennsylvania and law enforcement's monitoring of such movement was not challenged or otherwise addressed by the court in Burgos.  However, it is notable that although

law enforcement in <u>Burgos</u> monitored the movement of the vehicle outside of Pennsylvania, they did not enter these other jurisdictions. It appears that limiting law enforcement to monitoring of a mobile tracking device "within this Commonwealth" would permit law enforcement to note that the mobile tracking device had left the Commonwealth.

In this case, law enforcement monitored the target vehicle's exit from the Commonwealth and entry into Ohio *and also* physically entered Ohio to continue monitoring and surveillance. It is difficult to view this conduct as anything but a violation of the Pennsylvania Statute and of the Lawrence County Court's Order. The statute clearly prohibits even the monitoring of a vehicle outside of Pennsylvania, stating that the use of a mobile tracking device is authorized "if the device is installed and *monitored within this Commonwealth*." 28 Pa. Cons. Stat. § 5761(b) (emphasis added). Similarly, the Court's Order permits monitoring of the tracked vehicle "so long as the vehicle is within the Commonwealth." ECF No. 581-2, ¶ 10. The Order also provides that the consequences of violating the monitoring limitation are the prohibition of using, under the authority of the Order, information "obtained concerning the vehicle's movements outside the Commonwealth." <u>Id.</u> Finally, the Order allows for the possibility that information concerning the vehicle's movements outside the Commonwealth may be used "if authorized by another jurisdiction." <u>Id.</u>

The government stated that the conduct at issue would not violate federal law; however, such argument lacks merit because Pennsylvania law and a Pennsylvania Court Order are at issue. The government also argues that the Order is vague, the conduct was not unreasonable given that Youngstown, Ohio and New Castle, Pennsylvania are geographically connected at the state line, and finally that suppression is not an appropriate sanction. The prohibition and the limitations within the Court's Order are not vague. Law enforcement violated both the Court's

Order and the Pennsylvania statute, when it monitored the vehicle's location outside of this Commonwealth.  To ignore such conduct would effectively vitiate both a valid Court Order and a valid State law.  As such, Mr. Searcy's Motion is GRANTED to the extent that evidence against the Defendant obtained by law enforcement as a result of monitoring the target vehicle's movement outside of the Commonwealth shall be suppressed.

## II.  Conclusion

In summary, and for the reasons stated above, Quantel Searcy's Motion to Suppress Evidence Obtained from Mobile Tracking Device, ECF No. 581, is GRANTED, in part. Evidence against the Defendant obtained by law enforcement as a result of monitoring the target vehicle's movement outside of the Commonwealth shall be suppressed.  The Motion is DENIED in all other respects.

IT IS SO ORDERED.

Dated: May 13, 2021

Marilyn J. Horan
United States District Court Judge